UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RUTH KAREN ALVAREZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-10-1292 |
| | § | |
| LIBERTY MUTUAL FIRE INSURANCE | § | |
| COMPANY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Defendant Liberty Mutual Fire Insurance Company's ("Liberty") motion for summary judgment. Doc. 32. Liberty moves for summary judgment on the grounds that "Plaintiff's extra-contractual or 'bad faith' claims are precluded as a matter of law because the undisputed evidence in this case establishes that Liberty had reasonable or *bona fide* grounds for concluding that Plaintiff Alvarez was not an employee of Liberty's insured." *Id.* at 1.[1] Plaintiff Ruth Karen Alvarez also moves for reconsideration of the Court's opinion and order of March 22, 2011, in which the Court denied Alvarez' motion for remand.

In addition, Liberty has filed a reply to Alvarez's response to Liberty's motion for summary judgment in which Liberty urges the Court to grant summary judgment on Alvarez's claims in light of the Texas Supreme Court's recent decision in *Texas Mutual Insurance Co. v. Ruttiger,* __S.W. 3d.___, 2011 WL 3796353 (Tex. Aug. 26, 2011)  Doc. 58.

The Court finds that Alvarez has not alleged sufficient grounds to justify reconsideration of the Court's previous order denying remand.

The Court finds that *Ruttiger* forecloses Alvarez's claims under the Texas Insurance

---

[1] Alvarez' original complaint asserts claims against Liberty for violations of the Texas Insurance Code, Sections 541.060(a)(2)(A), (a)(3), and (a)(7); Sections 541.061(1), (2), and (3); and Section 415.002; violations of the Texas Deceptive Trade Practices Act ("DTPA"); and breach of its duty of good faith and fair dealing.

Code and the DTPA and therefore grants Liberty's motion for summary judgment as to these claims. Because *Ruttiger* did not explicitly foreclose the traditional cause of action for breach of common law duties of good faith and fair dealing, however, the Court denies Liberty's motion on this ground. Nevertheless, Liberty has introduced sufficient evidence to demonstrate the absence of a genuine issue of material in this case and therefore is entitled to summary judgment.

Background

This case arises out Liberty's denial of Alvarez's claims for workers' compensation benefits after Alvarez was injured on the job while working as a security guard at the Treemont Retiremont Home. Alavarez alleges that Liberty unreasonably and unlawfully denied her claims for worker's compensation and that the denial caused Alvarez the undue hardship of pursuing her claims through the administrative dispute process. *See* Doc. 43 at 24.

The Court states the facts as alleged in Plaintiff's original complaint and in her reply to the Defendant's motion for summary judgment. Smith Protective Services employed Alvarez as a security officer in the Treemont Retirement Home. Doc. 1-1 at 3; Doc. 43 at 2. On or about March 20, 2009, two unidentified assailants attacked Alvarez in the parking lot of the Treemont Home when she requested that they identify themselves to her. Doc. 43 at 2. Alvarez was treated for her injuries in the emergency room at Memorial Hermann Hospital. *Id.*

On April 20, Edith Ares, a claims representative employed by Liberty, investigated Alvarez's claim and subsequently denied it. Doc. 43 at 3. On May 27, 2009, Liberty sent Alvarez a "notice of denial of compensability" stating that Liberty was denying Alvarez's claim because Alvarez's injuries "did not arise out of or in the course and scope of employment for the employer . . . [and because Alvarez was] not an employee of Smith Protective Services." Doc. 1-1 at 12.

2 / 14

On November 5, 2009, Alvarez prevailed in a Contested Case Hearing against Liberty before the Texas Department of Insurance-Division of Workers' Compensation ("DWC"). *Id.* at 4. The DWC found that Alvarez was employed by Smith Protective Services and ordered Liberty to pay workers' compensation benefits to Alvarez including benefits accrued but unpaid during the time that Liberty denied Alvarez's claim. Doc. 1-1 at 16.

On March 16, 2010, Alvarez brought a case in the 165th Judicial District of Harris County alleging claims against Liberty under the Texas Insurance Code, breaches of Liberty's duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). Doc. 1-1 at 5-8. Additionally, Alvarez purports to allege the cause of action of "punitive damages for bad faith" which the Court construes as part of Alvarez's request for damages, rather than as an independent cause of action.

On April 21, 2010, Liberty removed the case to this Court on grounds of the Court's diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1.

April 22, 2011, Liberty filed a motion for summary judgment, alleging that Alvarez's "extra-contractual or 'bad' faith claims are precluded as a matter of law because the undisputed evidence in this case establishes that Liberty had reasonable or *bona fide* grounds for concluding that Plaintiff Alvarez was not an employee of Liberty's insured." Doc. 32 at 1.

<u>Alvarez' Motion for Reconsideration</u>

Alvarez moves for reconsideration of the Court's previous order denying Alvarez's motion to remand. Doc. 27. In that order, the Court found that Alvarez improperly joined Edith Ares, Liberty's claims adjuster, because "Alvarez' petition fails to allege any particular instance when Ares subjected herself to liability separate and apart from Liberty." *Id.* at 5. Alvarez now moves for reconsideration on the grounds that recently taken deposition testimony of Ares shows

that "she had personal responsibility for the decisions regarding Ms. Alvarez's benefits." Doc. 43 at 22.

Motions for reconsideration are cognizable under either Federal Rule of Civil Procedure 59(e), as motions "to alter or amend judgment," or under Rule 60(b), as motions for "relief from judgment." *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 173 (5th Cir. 1990). "Under which Rule the motion falls turns on the time at which the motion is served. If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b)." *Id.* (*citing Harcon Barge Co. v. D & G Boat Rentals*, 784 F.2d 665, 667 (5th Cir.1986) (*en banc*). Because Alvarez  brought her motion for reconsideration more than ten days from entry of judgment, reconsideration can only be given within the stricter limitations of Rule 60(b). To do otherwise would be an abuse of discretion. *Id.*

Under Rule 60(b), in order to prevail, Alvarez must demonstrate that she is entitled to relief from the judgment due to: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . .; [or if] (4) the judgment is void; [or] (5) the judgment has been satisfied, released or discharged . . .; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). The district court enjoys considerable discretion when determining whether the movant has satisfied these standards. *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir. 1991).

Alvarez points to Ares' testimony that she has personal responsibility for some decisions in Alvarez' claim, that she was licensed as an insurance adjuster and therefore had "independent responsibilities not to violate the law" including a "personal responsibility as an adjuster to do a reasonable investigation" before she made claims decisions. *Id.* This Court has previously stated

that when an adjuster's actions "can be accomplished by [the insurer] through an agent" and when the claims against the adjuster are identical to those against the insurer, the adjuster's actions "are indistinguishable from [the insurer's] actions" and hence are insufficient to support a claim against the adjuster. *Centro Cristiano Cosecha Final, Inc. v. Ohio Cas. Ins. Co.*, 2011 WL 240335, *14 (S.D.Tex. Jan. 20, 2011). Although Alvarez has introduced additional evidence of Ares' actions, she has not adequately alleged that her claims against Ares are anything more than a facsimile of her claims against Liberty designed to preserve diversity. Her motion for reconsideration is a reiteration of her previously asserted arguments in favor of remand and does not meet the standards of Rule 60(b). The Court therefore denies her motion for reconsideration.

Legal Standard for Summary Judgment

A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   The substantive law governing the suit identifies the essential elements of the claims at issue, and therefore indicates which facts are  material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Col. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).   Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an

affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the non-movant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006). To do so, the non-movant must "go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is genuine issue for trial." *Webb v. Cardiothracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).

Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (1992), *cert. denied*, 506 U.S. 825 (1992).  Pleadings are also not summary judgment evidence.  *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075.). The Court is not

required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). There is a "genuine" issue of material fact if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

<u>Alvarez's Claims Under the Texas Insurance Code</u>

In her original complaint, Alvarez claimed that Liberty's initial denial of her workers' compensation claims violated the Texas Insurance Code provisions which prohibit unfair settlement practices by an insurer "with respect to a claim by an insured." Tex.Ins.Code § 541.060(a). Specifically, Alvarez claims that Liberty violated provisions of Section 541.060 that prohibit an insurer from:

(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:

(A) a claim with respect to which the insurer's liability has become reasonably clear; . . .

(3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's

denial of a claim or offer of a compromise settlement of a claim; . . .

(7) refusing to pay a claim without conducting a reasonable investigation with

respect to the claim.

Tex.Ins.Code §§ 541.060(a)(2)(A), (a)(3), (a)(7). Alvarez also alleges that Liberty

breached portions of the Texas Insurance Code that prohibit an insurer from:

(1) making an untrue statement of material fact;

(2) failing to state a material fact necessary to make other statements made not

misleading, considering the circumstances under which the statements were made;

[or]

(3) making a statement in a manner that would mislead a reasonably prudent

person to a false conclusion of a material fact.

Tex.Ins.Code §§ 541.061(1-3).

Alvarez' claims are foreclosed by the Texas Supreme Court's recent ruling in *Ruttiger*.[2]

In *Ruttiger*, the plaintiff filed suit against his employer's workers' compensation carrier, alleging

violations of the Insurance Code and the DTPA, as well as a breach of the duty of good faith and

fair dealing, for the insurer's delay in paying workers' compensation benefits. *Id*. at *3. The

Texas Supreme Court found that "the current [Texas Workers' Compensation] Act with its

definitions, detailed procedures, and dispute resolution process demonstrating Legislative intent

for there to be no alternative remedies" foreclosed a plaintiff's right to a private action under

Section 541.060 of the Texas Insurance Code. *Id.* at *12; *see also England v. Liberty Mut. Ins.*

*Co.*, 2011 WL 5873002, *5 (S.D.Tex. Nov. 21, 2011) (The Texas Supreme Court "determined

that the general provisions of § 541.060 of the Insurance Code were inconsistent with the

---

[2] The Texas Supreme Court's opinion in *Ruttiger* has not been published and remains subject to withdrawal or modification. Because it nonetheless reflects the current position of the state's highest court on this issue, the court will consider it in accordance with *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

legislative intent of the amended TWCA.").

Additionally, Alvarez claims that Liberty "allowed the employer to dictate the methods by which and the terms on which a claim is handled and settled," (Doc. 1-1 at 6), a purported violation of the Texas Labor Code, by which an insurer commits an administrative violation when "it allows an employer, other than a self-insured employer, to dictate the methods by which and the terms on which a claim is handled and settled." Tex.Lab.Code § 415.002(a)(6). This provision of the Labor Code relates to administrative violations, not private rights. In fact, the Texas Supreme Court in *Ruttiger* explicitly referenced the existence of administrative requirements and penalties administered by the Division of Workers' Compensation under Section 415.002 of the Labor Code as a justification for extinguishing a private right of action for claimants. Section 415.002 does not create an independent cause of action against an insurer.

Because Alvarez asserts a right to private action under § 541.060 that has been foreclosed by the Texas Supreme Court, the Court finds that Alvarez' claims must be dismissed.

<u>Alvarez' Claims Under the DTPA</u>

Alvarez alleged in her initial complaint that "Defendants' violations of the Texas Insurance Code . . . specifically violate the DTPA as well." The Texas Supreme Court in *Ruttiger* confronted the same circumstance in which a plaintiff's DTPA claims turn on a defendant's violation of the Insurance Code and found that, because Insurance Code claims were foreclosed, DTPA claims also must fail. *Ruttiger*, at *14.  Here, because Alvarez cannot recover on her Insurance Code claims, her DTPA claims necessarily must fail. The Court therefore dismisses Alvarez' DTPA claims.

Claims Alleging a Breach of the Duty of Good Faith and Fair Dealing

Alvarez asserts that Liberty breached its duty of good faith and fair dealing to her by "refusing to properly investigate and effectively denying [her] medical care and other benefits." Doc. 1-1 at 7. Alvarez's common law claim asserts a right within the framework of *Aranda v. Ins. Co. of North America*, 748 S.W.2d 210, 215 (Tex. 1998), which established the right of employees to assert claims for breach of the duty of good faith and fair dealing against workers' compensation insurers. Liberty admits that "Alvarez's common law 'bad faith' cause of action may not yet be foreclosed by *Ruttiger*" but contends that "the handwriting is clearly on the wall" that the Texas Supreme Court will "abandon the outdated *Aranda* regime." Doc. 38 at 6.  Liberty points out that "four justices of the Texas Supreme Court emphasized that 'Texas should join the majority of states that do not allow *Aranda*-type suits in the workers' compensation setting,' three justices opposed overruling *Aranda*, and two justices requested remand to the court of appeals to address the issue." *Id*. at 6-7 (quoting *Ruttiger*, at *23). On these grounds, Liberty asks the Court to "hazard an educated *Erie*-type guess that the Texas Supreme Court" will abandon *Aranda*. *Id.* at 7. In the absence of an explicit ruling by the Texas Supreme Court on the continuing vitality, this Court declines to overrule established state law precedent. Liberty's motion for summary judgment on this ground is therefore denied.

Liberty's Original Grounds for Summary Judgment

Before supplementing its motion for summary judgment in light of the recent *Ruttiger* decision, Liberty moved for summary judgment on the grounds that "the undisputed evidence in this case establishes that Liberty had reasonable or *bona fide* grounds for concluding that Plaintiff Alvarez was not an employee of Liberty's insured." Doc. 32. Because the Court already has already determined that Alvarez has no valid claims under the Insurance Code or the DTPA,

the Court limits its consideration of this motion to Alvarez' common law claims under *Aranda*.

In a recent case, Magistrate Judge Nancy Johnson detailed the contours of *Aranda* claims:

> Under Texas law, a workers' compensation insurer owes its insured's employees a duty to deal fairly and in good faith in processing claims. *Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 459 (5th Cir. 1997) (applying Texas law); (extending *Arnold v. Nat'l County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987) to the workers' compensation system). . . The insurer breaches this duty in denying a claim if "the insurer knew or should have known that it was reasonably clear that the claim was covered." *U.S. Fire Ins. Co. v. Williams,* 955 S.W.2d 267, 268 (Tex. 1997). Even if the insurer is found to be wrong in denying a claim, it may not be liable for bad faith if it can establish the existence of a bona fide dispute. *Id.* Whether an insurer has a reasonable basis for a denial is to be judged according to the facts before the insurer at the time. *Harbor Ins. Co. v. Urban Constr. Co.,* 990 F.2d 195, 202 (5th Cir. 1993) (applying Texas law); *Viles v. Sec. Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex. 1990). In order to support a claim of bad faith, the insured must offer evidence that the insurer had no facts to support a denial. *Higginbotham,* 103 F.3d at 459.
> Within the insurer's duty to deal fairly and in good faith falls the obligation to "reasonably investigate a claim." *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 56 n. 5 (Tex. 1997). That is to say, if a full, unbiased investigation would have made coverage reasonably clear, the insurer cannot avoid bad faith liability by conducting an outcome determinative investigation. *See id.* ("[a]n insurer will not escape liability merely by failing to investigate a claim so that it can contend that liability was never reasonably clear.").

*England v. Liberty Mut. Ins. Co.*, 2011 WL 5873002, *8-9.

Liberty asserts its right to summary judgment the grounds that 1) Alvarez has failed to introduce evidence showing that Liberty did not correctly apply the borrowed servant doctrine to her claim; 2) Liberty satisfied its burden of showing that it conducted an adequate investigation before denying Alvarez' claim, and that a *bona fide* dispute existed as to whether Alvarez was a covered employee; and 3) Alvarez failed to exhaust her administrative remedies.

1. Borrowed Servant Doctrine

Liberty states that "[a]t its core, Plaintiff's lawsuit revolves around one fundamental argument: that Liberty did not correctly apply the borrowed servant doctrine to her claim." (Doc. 32 at 6). Before describing the borrowed servant doctrine and applying it to the facts of this case,

Liberty emphasizes that "undisputed evidence . . . clearly shows that Liberty had a reasonable basis to dispute compensability." namely, the "undisputed fact of Plaintiff's employment by Centurion." *Id*. at 8. Because Plaintiff was employed by Centurion, Liberty asserts, and because Centurion did not have workers' compensation coverage from Liberty, Alvarez's right to recovery from Liberty depended on whether she properly was considered an employee *de jure* of Smith Protective Services by application of the borrowed servant doctrine. "Under the borrowed servant or special employee doctrine, an employee of a general employer may become the special employee of another employer, if the other employer has the right of control." *Guerrero v. Harmon Tank Co., Inc.,* 55 S.W.3d 19, 24-25 (Tex.App.-Amarillo 2001) (pet. denied), citing *Esquivel v. Mapelli Meat Packing Company,* 932 S.W.2d 612, 614 (Tex.App.-San Antonio 1996) (writ denied).

       2. The Reasonableness of Liberty's Investigation

       Next, Liberty argues that it "had a reasonable basis for its coverage decision" because it conducted an adequate investigation of Alvarez's employment status. Liberty states that the case "presents, at most, a *bona fide* dispute concerning whether plaintiff was employed by a Liberty insured and thus whether Liberty had any liability at all to plaintiff for workers compensation benefits." Doc. 32 at 10. The latter point, whether Alvarez was employed by a Liberty insured, was resolved at the DWC hearing; the remaining issue is whether Alvarez' employment status was readily ascertainable by a reasonable investigation at the time Alvarez made her claim. Both parties have submitted evidence purporting to show which company, either Smith Protective Services, Inc./Smith Protective Management, Inc. or Centurion, dba, Smith Protection Security, Alvarez was working for at the time of her injuries. Because the issue in this case is Liberty's initial denial of Alvarez' claims, evidence establishing who was Alvarez' employer is relevant

12 / 14

only if it was available to Liberty through a reasonable investigation before Liberty denied Alvarez' claim.

In support of the assertion that its investigation was reasonable, Liberty submits Ares' affidavit in which she states that she received a letter from Centurion, Alvarez' purported employer at the time of her attack, in which Centurion stated "Alvarez is not an employee of Smith Protective Services, Inc./Smith Protective Management, Inc.," which were Liberty's insureds,  and that the claim "was filed in error under the wrong employer/policy number." Doc. 32-1 at 2.  Liberty then contacted Centurion and was informed that Alvarez was employed by Centurion, which was not a subscriber to workers compensation.  *Id*.

 Alvarez did not dispute that Liberty's investigation did not find any indication that Alvarez was not an employee of Centurion, that Centurion issued Alvarez's paychecks, and that Alvarez had signed a Notice of Non-Subscriber Status on November 21, 2006, when she was hired by Centurion.  Liberty asserts that it "reasonably relied on statements by representatives of Centurion . . . that Alvarez was an employee . . . not of SPSI . . . but of Centurion." Doc. 32 at 9. Liberty's summary judgment evidence supports its contention that the factual record before it at the time it made the determination indicated that Alvarez was not an employee of a Liberty insured.

In response, Alvarez points to Ares' deposition testimony in which Ares admits that an appropriate investigation includes "spend[ing] time getting information from the injured worker" and that Ares was "supposed to investigate" allegations by an employer that a claimant was not its employee. Doc. 43 at 9 (citing Doc. 43-4 at 27).  Texas law is clear, however, that "to support a claim of bad faith, the insured must offer evidence that the insurer had no facts to support a denial" at the time it made its determination. *England v. Liberty Mut. Ins. Co.*, 2011 WL

13 / 14

5873002, *8-9, citing *Higginbotham,* at 459. Here, Liberty has introduced the statement of Centurion that Alvarez was its employee. Although the DWC ultimately found that Smith Protective Services, Inc. actually controlled the details of her work, "[w]hether an insurer has a reasonable basis for a denial is to be judged according to the facts before the insurer at the time." *England* at *8,* citing *Harbor Ins. Co.* at 202. The factual record therefore reflects that Liberty's determination was reasonably based on evidence it obtained in the course of its investigation. "[C]arriers will maintain the right to deny invalid or questionable claims and will not be subject to [bad faith] liability for an erroneous denial of a claim." *Aranda*, at 213.

Conclusion

For the foregoing reasons, the Court hereby

**ORDERS** that Defendant Liberty Mutual Fire Insurance Company's motion for summary judgment (Doc. 32) is **GRANTED**. Further, the Court

**ORDERS** that Plaintiff Alvarez's motion for reconsideration (Doc. 43) is **DENIED**.

SIGNED at Houston, Texas, this 16th day of March, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE